1 | **BRYAN CAVE LLP**
Stuart W. Price (SBN 125918)
2 | Merrit M. Jones (SBN 209033)
Two Embarcadero Center, Suite 1410
3 | San Francisco, California 94111
Telephone:     (415) 675-3400
4 | Facsimile:     (415) 675-3434
Email: .........merrit.jones@bryancave.com
5 |
Attorneys for Defendant
6 | BANK OF AMERICA, N.A.

7

8

9 | **UNITED STATES DISTRICT COURT**

10 | **EASTERN DISTRICT OF CALIFORNIA – SACRAMENTO DIVISION**

11

12 | MICHAEL DOVGAN,                          | Case No.

13 |                  Plaintiff,

14 |        v.                               | **NOTICE OF REMOVAL OF CIVIL ACTION PURSUANT TO 28 U.S.C. §§ 1331, 1441(b)**

15 | BANK OF AMERICA, N.A.,
NORTHWEST TRUSTEE SERVICES, INC.,
16 | JOHN OR JANE DOES 1-1000, Inclusive,   | (Sacramento Superior Court Case No. 34-2010-00079567)

17 |                  Defendants.            | **[Federal Question Jurisdiction]**

18

19

20

21

22

23

24

25

26

27

28

*Left margin (vertical):* BRYAN CAVE LLP
2 EMBARCADERO CENTER, SUITE 1410
SAN FRANCISCO, CA 94111

SF01DOCS26105.1

NOTICE OF REMOVAL OF CIVIL ACTION

1    **TO PLAINTIFF MICHAEL DOVGAN, HIS ATTORNEY OF RECORD, AND THE**

2    **CLERK OF THE ABOVE-ENTITLED COURT:**

3        **PLEASE TAKE NOTICE THAT** pursuant to 28 U.S.C. §§ 1441 and 1446, Defendant

4    BANK OF AMERICA, N.A. ("Removing Defendant") hereby removes the above-referenced

5    action filed by Plaintiff Michael Dovgan ("Plaintiff"), from the Superior Court of the State of

6    California, County of Sacramento, to the United States District Court for the Eastern District of

7    California, and in support of this removal state as follows:

8                            **PROCEDURAL HISTORY**

9        1.      On or about June 4, 2010, Plaintiff filed a Complaint in the Superior Court of the

10   State of California, County of Sacramento, entitled *Michael Dovgan v. Bank of America, et al.*,

11   Sacramento County Case No. 34-2010-00079567 (the "State Court Action"). The Complaint

12   asserted a total of nine causes of action against Removing Defendants labeled, *inter alia*,

13   Violations of the Home Ownership Equity Protection Act, Violations of the Real Estate Settlement

14   Procedures Act, Violations of the Truth in Lending Act, Violations of the Fair Credit Reporting

15   Act, Fraudulent Misrepresentation, Breach of Fiduciary Duty, Unjust Enrichment, Civil

16   Conspiracy, and Violations of Civil RICO. A true and correct copy of the Complaint, Summons,

17   and Civil Cover Sheet are attached as Exhibit 1.

18       2.      On or about June 14, 2010, Plaintiff filed a Substitution of Attorney, naming

19   Timothy L. McCandless as Plaintiff's attorney. A true and correct copy of the Substitution of

20   Attorney is attached as Exhibit 2.

21       3.      Also on or about June 14, 2010, Plaintiff filed a Notice of Lis Pendens. A true and

22   correct copy of the Notice of Lis Pendens is attached as Exhibit 3.

23       4.      On or about July 1, 2010, Plaintiff filed a Substitution of Attorney removing

24   Timothy L. McCandless as attorney for Plaintiff. A true and correct copy of the Substitution of

25   Attorney is attached as Exhibit 4.

26                            **TIMELINESS OF REMOVAL**

27       5.      Removing Defendant has not been properly served, but accepts service as of the

28   date of filing this Notice of Removal. Upon information and belief, Northwest Trustee Services,

*(left margin)* BRYAN CAVE LLP / 2 EMBARCADERO CENTER, SUITE 1410 / SAN FRANCISCO, CA 94111

1  Inc. has not been served.  This Notice of Removal is being filed on January 25, 2011 and is timely

2  under 28 U.S.C. § 1446(b).

3  ## BASIS FOR REMOVAL JURISDICTION

4      6.    This action is a civil action of which this Court has original jurisdiction under 28

5  U.S.C. § 1331, and is one which may be removed to this Court by Removing Defendants pursuant

6  to the provisions of 28 U.S.C. § 1441(b), in that the Complaint served on November 19, 2010,

7  alleges claims for damages under the Home Ownership Equity Protection Act, 15 U.S.C. § 1639,

8  et seq.; the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601, et seq.; the Truth in Lending

9  Act, 15 U.S.C. § 1601, et seq.; and the Fair Credit Reporting Act, 15 U.S.C. § 1681 (*See*

10  Complaint ¶¶ 33, 35, 36, 38, 39, 41, 50, and 54-79.)

11  ## PROCEDURES FOR REMOVAL

12      7.    Exhibits 1 through 4 constitute all process, pleadings, and orders received and

13  obtained by Removing Defendant in the State Court Action.  28 U.S.C. § 1446(a).

14      8.    Pursuant to 28 U.S.C. § 1446(d), Removing Defendant is filing a copy of this

15  Notice of Removal with the Superior Court of the State of California for the County of

16  Sacramento, and is serving a copy of the same upon Plaintiff.

17  ## NOTICE TO STATE COURT

18      9.    A copy of this Notice of Removal is being filed with the Clerk of the Superior

19  Court for the County of Sacramento as an exhibit to Removing Defendant's Notice to Adverse

20  Party and State Court of Removal of Civil Action to Federal Court.  A copy of the Notice to

21  Adverse Party and State Court of Removal of Civil Action to Federal Court, which is being filed

22  in state court, is attached hereto (without exhibits) as Exhibit 5.

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

BRYAN CAVE LLP
2 EMBARCADERO CENTER, SUITE 1410
SAN FRANCISCO, CA 94111

SF01DOCS26105.1

NOTICE OF REMOVAL OF CIVIL ACTION

1    WHEREFORE, Removing Defendant hereby gives notice that the above action now

2  pending in the Superior Court of the State of California for the County of Sacramento is removed

3  in its entirety to this Court.

4

5  Dated:  January 28, 2011                    **BRYAN CAVE LLP**
                                               Stuart W. Price
6                                              Merrit M. Jones

7

8                                       By:    /s/ Merrit M. Jones
                                               Merrit M. Jones
9                                              Attorneys for Defendant
                                               BANK OF AMERICA, N.A.
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NOTICE OF REMOVAL OF CIVIL ACTION

# EXHIBIT 1



M. Dorgan

RECEIVED
JUL 1 2 2010
LEGAL DIVISION

FREM
JUN 1 8 20..

# Civil Case

# Packet



# SUPERIOR COURT OF CALIFORNIA
## County of Sacramento
## 720 9th Street
## Sacramento, CA 95814
### (916) 874-5522—Website www.saccourt.ca.gov

# ALTERNATIVE DISPUTE RESOLUTION
# INFORMATION SHEET

Recognizing that many civil disputes can be resolved without the time and expense of traditional civil litigation, the Superior Court of California, County of Sacramento (Sacramento County Superior Court), strongly encourages parties in civil cases to explore and pursue the use of Alternative Dispute Resolution.

**What is Alternative Dispute Resolution?**

Alternative Dispute Resolution (ADR) is the general term applied to a wide variety of dispute resolution processes which are alternatives to lawsuits. Types of ADR processes include:

- Arbitration
- Mediation
- Settlement Conferences
- Private judging
- Neutral evaluation
- Mini-trials
- Negotiation and *hybrids* of these processes

All ADR processes offer a partial or complete alternative to traditional court litigation for resolving disputes. At the present time, the Sacramento County Superior Court offers Mediation and Arbitration.

**What are the advantages of using ADR?**

ADR can have a number of advantages over traditional court litigation.

- **ADR can save time.** Even in a complex case, a dispute can be resolved through ADR in a matter of months or weeks, while a lawsuit can take years.

- **ADR can save money.** By producing earlier settlements, ADR can save parties and courts money that might otherwise be spent on litigation costs (attorneys fees and court expenses.)

- **ADR provides more participation.** Parties have more opportunity with ADR to express their own interests and concerns, while litigation focuses exclusively on the parties' legal rights and responsibilities.

- **ADR provides more control and flexibility.** Parties can choose the ADR process most appropriate for their particular situation and that will best serve their particular needs.

- **ADR can reduce stress and provide greater satisfaction.** ADR encourages cooperation and communication, while discouraging the adversarial atmosphere found in litigation. Surveys of disputants who have gone through ADR have found that satisfaction with ADR is generally high, especially among those with extensive ADR experience.

**Arbitration and Mediation**

Although there are many different types of ADR processes, the forms most commonly used to resolve disputes in California state courts are Arbitration and Mediation. The Sacramento County Superior Court currently offers pre-screened panelists with experience and training in each of the following areas.

**Arbitration.** An Arbitrator hears evidence presented by the parties, makes legal rulings, determines facts and makes an Arbitration award. Arbitration awards may be entered as judgments in accordance with the agreement of the parties or, where there is no agreement, in accordance with California statutes. Arbitration can be binding if the parties so agree in writing. If there is no such agreement, either party can reject the Arbitration award and request a trial



# SUPERIOR COURT OF CALIFORNIA
## County of Sacramento
### 720 9th Street
### Sacramento, CA 95814
### 916-874-5522—www.saccourt.ca.gov

## CIVIL DEPARTMENT ASSIGNMENT INFORMATION

Implementation of the Court Case Management System has changed the way cases are assigned to the Case Management Program, Law and Motion and Minor's Compromise departments. If your case was filed with the Court prior to the implementation of CCMS, please refer to the chart outlining department assignments for Legacy Cases. If your case was filed with the Court after implementation of CCMS, please refer to the chart outlining department assignments for CCMS Cases.

### Department Assignments for Legacy Cases

Legacy cases are assigned to CMP and Minors Compromise departments using the last two digits of the case number. Law and Motion matters are assigned on an odd/even basis. Legacy Cases are cases that were filed with the Court prior to November 5, 2007. Legacy case numbers are formatted as follows: *07AS03344 or 05AM05566*.

| Case Number Ending | Case Management Program | Minors Compromise |
|---|---|---|
| 50 – 74 | Department 39 | Department 22 |
| 25 – 49 | Department 35 | Department 14 |
| 75 – 99 | Department 44 | Department 38 |
| 00 – 24 | Department 45 | Department 24 |

### Department Assignments for CCMS Initiated Cases

CCMS initiated cases are assigned by the system to the CMP departments using a round robin methodology. The Law & Motion and Minors Compromise departments are based on the CMP department assignment. CCMS initiated cases are cases that were filed with the Court after the implementation of CCMS, November 5, 2007 or after. CCMS case numbers are formatted as follows: *34-2008-0001122*.

| Case Management Program | Law & Motion | Minors Compromise |
|---|---|---|
| Department 39 | Department 54 | Department 22 |
| Department 35 | Department 54 | Department 14 |
| Department 44 | Department 53 | Department 38 |
| Department 45 | Department 53 | Department 24 |

For additional information relative to department assignments or accessing Court tentative rulings, visit our website.

| COURT'S WEB SITE – WWW.SACCOURT.CA.GOV |
|---|



# SUPERIOR COURT OF CALIFORNIA
## County of Sacramento
### 720 Ninth Street
### Sacramento, CA  95814-1380
### (916) 874-5522—Website www.saccourt.ca.gov

## Program Case Notice
### Unlimited Civil Case

The Case Management Program (CMP) requires the following timelines to be met in all cases except those that are excluded by California Rule of Court 3.712(b) and (c):

| Action | Requirement |
|---|---|
| **Service of Summons** | Summons, complaint and program case notice must be served on all named defendants and proofs of service on those defendants must be filed with the court within **60 days** from the filing of the complaint. |
| | When the complaint is amended to add a new defendant, the added defendant must be served and proofs of service must be filed within **30 days** after the filing of the amended complaint. |
| | A cross-complaint adding a new party must be served and proofs of service must be filed with the court **30 days** from the filing of the cross-complaint. |
| **Statement of Damages** | If a statement of damages pursuant to Section 425.11 of the Code of Civil Procedure or a statement of punitive damages is required, it must be served with the summons and complaint. |
| **Certificate of Service/Ex Parte Application** | Within **75 days** of the filing of the complaint, plaintiff must file a certificate of service or an Ex Parte Application for Extension of Time to Serve Pleading on a form provided by the Judicial Council. . |
| **Responsive Pleadings** | If a responsive pleading is not served within the time limits and no extension of time has been granted, the plaintiff within **10 days** after the time for service has elapsed must file a request for entry of default. |
| | Parties may stipulate without leave of court to one 15-day extension beyond the 30-day time period prescribed for the response after service of the initial complaint. |
| | No extensions of time to respond beyond **105 days** from the filing of the complaint may be given. |
| **Judgment by Default** | When default is entered, the party who requested the entry of default must apply for a default judgment against the defaulting party within **45 days** after entry of default, unless the court has granted an extension of time. |
| **Case Management Statement** | The court will serve a notice of case management conference on all parties approximately 120 days after the complaint is filed.  A case management conference statement shall be filed at least **15 calendar days** prior to the date set for the case management conference. |
| **Meet and Confer** | Parties must meet and confer, in person or by telephone as required in California Rules of Court 3.724 at least **30 calendar days** before the case management conference date. |
| **Case Management Conference** | A case management conference is generally held within **180 days** of the filing of the complaint. |

Failure to comply with the program rules may result in the imposition of sanctions or an order to show cause.  Please refer to Local Rule 11.00 for more information.

## NOTE: THIS NOTICE MUST BE SERVED WITH THE SUMMONS AND COMPLAINT.

Program Case Notice (Unlimited Civil Case)

**SUM-100**

# SUMMONS
## (CITACION JUDICIAL)

| | FOR COURT USE ONLY<br>(SOLO PARA USO DE LA CORTE) |
|---|---|

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

(SEE ATTACHED LIST)

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

Michael Dovgan

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is: Superior Court of California
*(El nombre y dirección de la corte es):*

720-9th Street Sacramento CA 95814

Gordon Schaber Downtown Court House

CASE NUMBER:
*(Número del Caso):* 2010-00079567

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*

Michael Dovgan (In Pro Per) 7229 La Tour Drive, Sacramento CA 95842       916-821-5654

| DATE: JUN - 4 2010 | Clerk, by L. WHITFIELD | , Deputy |
|---|---|---|
| *(Fecha)* | *(Secretario)* | *(Adjunto)* |

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):*

   under: ☐ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation)     ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)

   ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUM-100 [Rev. July 1, 2009] | **SUMMONS** | Code of Civil Procedure §§ 412.20, 465<br>www.courtinfo.ca.gov<br>American LegalNet, Inc.<br>www.FormsWorkflow.com |
|---|---|---|

**SUM-200(A)**

| SHORT TITLE:<br>_ Dovgan V. Bank of America NA et. al. | CASE NUMBER: |
|---|---|

### INSTRUCTIONS FOR USE

→ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.
→ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties
  Attachment form is attached."

List additional parties (Check only one box. Use a separate page for each type of party.):

☐ Plaintiff      ☐ Defendant      ☐ Cross-Complainant      ☐ Cross-Defendant

Bank of America NA
Northwest Trustee Services Inc.
John or Jane DOES 1-1000, Inclusive

Page _____ of _____

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-200(A) [Rev. January 1, 2007]

**ADDITIONAL PARTIES ATTACHMENT**
**Attachment to Summons**

American LegalNet, Inc.
www.FormsWorkflow.com

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|

Michael Dovgan
7229 La Tour Drive
Sacramento CA 95842

TELEPHONE NO.: 916-821-5654       FAX NO.:
ATTORNEY FOR *(Name):* Plaintiff, In Pro Per

SUPERIOR COURT OF CALIFORNIA, COUNTY OF  Sacramento
  STREET ADDRESS: 720-9th Street
  MAILING ADDRESS: 720-9th Street
  CITY AND ZIP CODE: Sacramento CA 95814
  BRANCH NAME: Gordon Schaber Downtown Court House

FILED
Superior Court Of California,
Sacramento

06/04/2010

whitfield
By_____, Deputy

Case Number:
34-2010-00079567

CASE NAME:
Michael Dovgan Vs. Bank of America, N.A. et. al.

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER |
|---|---|---|---|---|
| ☑ Unlimited (Amount demanded exceeds $25,000) | ☐ Limited (Amount demanded is $25,000 or less) | ☐ Counter  ☐ Joinder Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | | JUDGE: |
| | | | | DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

**Auto Tort**
☐ Auto (22)
☐ Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
☐ Asbestos (04)
☐ Product liability (24)
☐ Medical malpractice (45)
☐ Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
☐ Business tort/unfair business practice (07)
☐ Civil rights (08)
☐ Defamation (13)
☐ Fraud (16)
☐ Intellectual property (19)
☐ Professional negligence (25)
☐ Other non-PI/PD/WD tort (35)

**Employment**
☐ Wrongful termination (36)
☐ Other employment (15)

**Contract**
☐ Breach of contract/warranty (06)
☐ Rule 3.740 collections (09)
☐ Other collections (09)
☐ Insurance coverage (18)
☐ Other contract (37)

**Real Property**
☐ Eminent domain/Inverse condemnation (14)
☐ Wrongful eviction (33)
☑ Other real property (26)

**Unlawful Detainer**
☐ Commercial (31)
☐ Residential (32)
☐ Drugs (38)

**Judicial Review**
☐ Asset forfeiture (05)
☐ Petition re: arbitration award (11)
☐ Writ of mandate (02)
☐ Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
☐ Antitrust/Trade regulation (03)
☐ Construction defect (10)
☐ Mass tort (40)
☐ Securities litigation (28)
☐ Environmental/Toxic tort (30)
☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
☐ Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
☐ RICO (27)
☐ Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
☐ Partnership and corporate governance (21)
☐ Other petition *(not specified above)* (43)

2. This case ☐ is  ☑ is not  complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
  a. ☐ Large number of separately represented parties
  b. ☐ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
  c. ☐ Substantial amount of documentary evidence
  d. ☐ Large number of witnesses
  e. ☐ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
  f. ☐ Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. ☑ monetary   b. ☑ nonmonetary; declaratory or injunctive relief   c. ☑ punitive
4. Number of causes of action *(specify):* 9
5. This case ☐ is  ☑ is not  a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: 6/3/10

Michael Dovgan
_____
(TYPE OR PRINT NAME)

▶ *Michael Dovgan* (signature)
_____
(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on **all** other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
*www.courtinfo.ca.gov*

American LegalNet, Inc.
www.FormsWorkflow.com

CM-010

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
  Auto (22)–Personal Injury/Property
    Damage/Wrongful Death
  Uninsured Motorist (46) *(if the
    case involves an uninsured
    motorist claim subject to
    arbitration, check this item
    instead of Auto)*
**Other PI/PD/WD (Personal Injury/
Property Damage/Wrongful Death)
Tort**
  Asbestos (04)
    Asbestos Property Damage
    Asbestos Personal Injury/
      Wrongful Death
  Product Liability *(not asbestos or
    toxic/environmental)* (24)
  Medical Malpractice (45)
    Medical Malpractice–
      Physicians & Surgeons
    Other Professional Health Care
      Malpractice
  Other PI/PD/WD (23)
    Premises Liability (e.g., slip
      and fall)
    Intentional Bodily Injury/PD/WD
      (e.g., assault, vandalism)
    Intentional Infliction of
      Emotional Distress
    Negligent Infliction of
      Emotional Distress
    Other PI/PD/WD
**Non-PI/PD/WD (Other) Tort**
  Business Tort/Unfair Business
    Practice (07)
  Civil Rights (e.g., discrimination,
    false arrest) *(not civil
    harassment)* (08)
  Defamation (e.g., slander, libel)
    (13)
  Fraud (16)
  Intellectual Property (19)
  Professional Negligence (25)
    Legal Malpractice
    Other Professional Malpractice
      *(not medical or legal)*
  Other Non-PI/PD/WD Tort (35)
**Employment**
  Wrongful Termination (36)
  Other Employment (15)

**Contract**
  Breach of Contract/Warranty (06)
    Breach of Rental/Lease
      Contract *(not unlawful detainer
        or wrongful eviction)*
    Contract/Warranty Breach–Seller
      Plaintiff *(not fraud or negligence)*
    Negligent Breach of Contract/
      Warranty
    Other Breach of Contract/Warranty
  Collections (e.g., money owed, open
    book accounts) (09)
    Collection Case–Seller Plaintiff
    Other Promissory Note/Collections
      Case
  Insurance Coverage *(not provisionally
    complex)* (18)
    Auto Subrogation
    Other Coverage
  Other Contract (37)
    Contractual Fraud
    Other Contract Dispute
**Real Property**
  Eminent Domain/Inverse
    Condemnation (14)
  Wrongful Eviction (33)
  Other Real Property (e.g., quiet title) (26)
    Writ of Possession of Real Property
    Mortgage Foreclosure
    Quiet Title
    Other Real Property *(not eminent
      domain, landlord/tenant, or
      foreclosure)*
**Unlawful Detainer**
  Commercial (31)
  Residential (32)
  Drugs (38) *(if the case involves illegal
    drugs, check this item; otherwise,
    report as Commercial or Residential)*
**Judicial Review**
  Asset Forfeiture (05)
  Petition Re: Arbitration Award (11)
  Writ of Mandate (02)
    Writ–Administrative Mandamus
    Writ–Mandamus on Limited Court
      Case Matter
    Writ–Other Limited Court Case
      Review
  Other Judicial Review (39)
    Review of Health Officer Order
    Notice of Appeal–Labor
      Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal.
Rules of Court Rules 3.400–3.403)**
  Antitrust/Trade Regulation (03)
  Construction Defect (10)
  Claims Involving Mass Tort (40)
  Securities Litigation (28)
  Environmental/Toxic Tort (30)
  Insurance Coverage Claims
    *(arising from provisionally complex
    case type listed above)* (41)
**Enforcement of Judgment**
  Enforcement of Judgment (20)
    Abstract of Judgment (Out of
      County)
    Confession of Judgment *(non-
      domestic relations)*
    Sister State Judgment
    Administrative Agency Award
      *(not unpaid taxes)*
    Petition/Certification of Entry of
      Judgment on Unpaid Taxes
    Other Enforcement of Judgment
      Case
**Miscellaneous Civil Complaint**
  RICO (27)
  Other Complaint *(not specified
    above)* (42)
    Declaratory Relief Only
    Injunctive Relief Only *(non-
      harassment)*
    Mechanics Lien
    Other Commercial Complaint
      Case *(non-tort/non-complex)*
    Other Civil Complaint
      *(non-tort/non-complex)*
**Miscellaneous Civil Petition**
  Partnership and Corporate
    Governance (21)
  Other Petition *(not specified
    above)* (43)
    Civil Harassment
    Workplace Violence
    Elder/Dependent Adult
      Abuse
    Election Contest
    Petition for Name Change
    Petition for Relief From Late
      Claim
    Other Civil Petition

CM-010 [Rev. July 1, 2007]

**CIVIL CASE COVER SHEET**

1   <u>Michael Dovgan</u>

2   <u>7229 La Tour Drive, Sacramento CA 95842</u>

3   <u>Phone (916) 821-5654</u>

4   Plaintiff In Pro Per

FILED
Superior Court Of California,
Sacramento
06/04/2010
Whitfield
By_____, Deputy

34-2010-00079567

5     **SUPERIOR COURT OF THE STATE OF CALIFORNIA:**

6        **COUNTY OF SACRAMENTO**

| | |
|---|---|
| 7   <u>Michael Dovgan</u> | CASE NO:_____ |
| 8       **Plaintiff,** | JUDGE:_____ |
| 9   V. | **COMPLAINT TO QUIET TITLE** |
|   <u>Bank of America, N.A.</u> | Arbitration Exemption |
| 10  <u>Northwest Trustee Services, Inc.</u> | Claimed: Action concerning |
| 11 | title |
|   <u>John or Jane DOES 1-1000,</u> | To real property |
| 12  Inclusive | **VIOLATIONS** |
| 13       **Defendants** | I-HOEPA |
| 14 | II-RESPA |
| 15 | III-FEDERAL TRUTH IN LENDING |
| 16 | ACT |
| 17 | IV-FAIR CREDIT REPORTING ACT |
| | V-FRAUDULENT MISREPRESENTATION |
| 18 | VI-BREACH OF FIDUCIARY DUTY |
| 19 | VII-UNJUST ENRICHMENT |
| 20 | VIII-CIVIL CONSPIRACY |
| 21 | IX-CIVIL RICO |

22

23                 *Department*
*Assignments*
*Case Management 39*
*Law and Motion 54*
*Minors Compromise 22*

24

25         **NATURE OF THE ACTION**

26

  1.  This case arises out of Defendants' egregious and ongoing and far reaching fraudulent

27

     schemes for improper use of Plaintiff's identity, fraud in the inducement, fraud in the

28

     execution, usury, and breaches of contractual and fiduciary obligations as Mortgagee or

                Complaint

"Trustee" on the Deed of Trust, "Mortgage Brokers", "Loan Originators", "Loan Seller",

"Mortgage Aggregator," Trustee of Pooled Assets", "Trustee of officers of Structured

Investments Vehicle", Seller of 'Asset-Backed' Certificates (shared of bonds)", "Special

Servicer" and Trustee, respectively of certain mortgage loans pooled together in a trust

fund.

2. The participants in the securitization scheme described herein have devised business plans

To reap millions of dollars in profits at the expense of Plaintiff, and other investors in certain

trust funds.

3. In addition to seeking compensatory, consequential and other damages, Plaintiff seeks

declaratory relief as to what (if any) party, entity, individual or group thereof is the owner of the

promissory note executed at the time of the loan closing and whether the Deed of Trust

(Mortgage) secures any obligations of the Plaintiff or, in the alternative a Final Judgment

granting Plaintiff **QUITE TITLE** in the subject property.

## FACTS

### Summary of the Facts of this Case

4. Plaintiff, **Michael Dovgan** at all times relevant has been a
resident of the County of Sacramento, State of California and the owner of
Real Property, including but not limited to the property at issue herein
**7229 La Tour Drive, Sacramento CA 95842**
and more particularly described as: THE LAND REFERRED TO HERIN BELOW IS
SITUATED IN THE CITY OF Sacramento, COUNTY OF SACRAMENTO, STATE OF
CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

Legal description (EXHIBIT "A"):

5. Plaintiff is the nominal payor on the subject promissory note. **Bank of America**, hereinafter referred to as **"BofA"**, defendant in this case, is the Loan Seller and the financial institution that were paid a fee to pose as a residential mortgage lender, when in fact the source of the loan funds and the actual lender (Investors in Certificates) and underwriter (Mortgage Aggregator and Investment Banker) were other parties whose identities and receipt of fees and profits were withheld from the Plaintiff at Closing and despite numerous requests continue to be withheld from Plaintiff by the Defendants contrary to the requirements of Federal Law and applicable State Law.

6. Unknown to Plaintiff, the Loan Seller, acting as principal in its relationships with the "independent appraise" of the property and the mortgage broker and mortgage originator, induced the Plaintiff into a transaction that did not and could not meet normal underwriting standards for a residential mortgage. The Loan Seller posed as a conventional mortgage lender thus leading Plaintiff to reasonably believe that the Loan Sell, the mortgage broker, and the loan originator had an interest in the success (repayment of the loan) of the transaction the Plaintiff was induced to believe was being executed at the time of the "closing" of the subject loan transaction.

7. In fact, the Loan Seller, mortgage broker, appraiser, loan originator, title agent, escrow agent and Trustee on the Deed of Trust, had no financial stake (i.e. liability) in the transaction and no interest other than obtaining Plaintiff's signature on said "loan" that could never be repaid, contrary to representations and assurances from conspiring participants in this

fraudulent scheme. In fact, the "Appraisal" (of subject property) was intentionally and knowingly inflated along with other loan data to justify the closing of the "loan transaction."

8. Plaintiff relied upon the due diligence of the apparent "Lender" (i.e. actually the Loan Seller) in executing and accepting the closing documents. In fact, no "lender" was involved in the "Closing" in the sense of an entity performing due diligence and evaluation pursuant to national standards for underwriting and evaluating risk of loaning money in a residential loan closing.

9. Thus no bank or other financial institution actually performing under the standards, rules and regulations governing such institutions was the "lender" which is the basis for Plaintiff's causes of action for usury, to wit: the inflated appraisal added an undisclosed cost to the loan which when added to the other terms, disclosed and undisclosed, and amortized over the real expected life of the "loan" exceeds the limits set by the State Legislature for usury and is not subject to exemption because the presence of a financial institution in the transaction was a ruse in which the form of the transaction covered over and mislead the Plaintiff at to the real parties in interest and the fees generated by the production of the subject "loan transaction".

10. Their purpose was solely to collect fees, rebates, kickbacks and profits that were never disclosed to Plaintiff and have only recently been discovered by Plaintiff through consultation with experts in securitization of residential mortgage loans, and diligent research including the filings of some parties with the Securities and Exchange Commission which disclosed the normal manner of operation this fraudulent scheme.

11. The Loan Seller **BofA** was named as the Payee on the subject promissory note and the beneficiary is the same under the mortgage terms allegedly securing the performance under the subject note.

**PRLAP, Inc.,** was named as the Trustee on the Deed of Trust executed at the time of the alleged "closing" of the "loan transaction". In accordance with State Law, the deed and terms of security was recorded in the Sacramento County Recorder's Office.

12. Notwithstanding the above, and without the knowledge of the Plaintiff, the Loan Seller had entered into Assignment and Assumption Agreements with one or more parties and Pooling and Service Agreements with one or more parties including but not limited to the mortgage aggregator prior to contemporaneously with the "Closing" of the subject "loan transaction".

    12.1    Under the terms of these agreements, the Loan Sellers received a sum of money, usually on receiving an application for a loan equal to the gross amount of the loan sought by Plaintiff plus a fee of 2.5% of more which was allocated to the subject loan transaction.

13. Contrary to the documents presented before and during the "Closing" of the "loan transaction" the Loan Seller were neither the source of the funding nor the "Lender"

    13.1    Thus at the time of recording, the source of funding and the "Lender" was a different entity than the nominal mortgagee or beneficiary under the deed of trust and was neither named nor disclosed in any fashion.

    13.2    The security for the "loan" thus secured an obligation that had been paid in full by **a third party.** Said third party (ies) was acting as a financial institution or "Lender" **without even having been chartered or registered to do so despite regulations to the contrary from laws and rules of State and/or Federal Authorities and/or Agencies.**

14. Some form of documentation represented by the Loan Seller to the Mortgage Aggregator was presented before contemporaneously with the

Complaint

"closing" of the "loan transaction".  In some cases the documentation included actual copies of the documents presented at "Closing".

    14.1    In most cases it consisted of either forged blank notes or vague descriptions of the content of the notes that were placed into the pool of assets that would be "securitized".

    14.2    Plaintiff has discovered numerous cases in which the "loan closing" either did not take place at all or included documentation substantially different than the original offer and acceptance and substantially different than what could have been reported to the Mortgage Aggregator prior to the "closing". Plaintiff has discovered numerous cases in which foreclosure has proceeded despite the fact that no loan closing was ever consummated, no papers were signed, or the loans were properly rescinded,  properly under law.

15.  Plaintiff does not know what version of documentation was presented to the Mortgage Aggregator and if Mortgage Aggregator took on e or more varying descriptions of the alleged "loan documents" into more than one pool of assets which was eventually sold for the purpose of securitizing the assets of the pool which included the subject loan transaction either once or more than once.  Plaintiff has requested such information numerous times only to be met with complete silence and defiance or obfuscation from the Defendants.

16.  There is no assignment of the subject property in the Sacramento County Records, but there is a non-recorded Pooling and Services Agreement and a non-recorded Assignment and Assumption Agreement which appears to substitute the Trustee over the pooled assets for the nominal Trustee in the Deed of Trust.

16.1  The powers of this second Trustee were in turn transferred to either a Trustee for a Special Investment Vehicle (which performed the accounting and reporting of the pool assets or to an investment bank Collateral Debt Obligation Manager shoes department performed the accounting and reporting of the pool assets.

16.2  The reporting of the pool assets consisted principally of description of the notes "signed" by Plaintiff and limited description of the general terms of the note such that the note appeared to be more valuable than the initial terms of payment by the "Plaintiff".

17.  The note from the subject "loan transaction" was eventually allocated into a new corporation (Special Purpose Vehicle) formed for the express purpose of holding the pooled assets under certain terms.

17.1  The terms included the allocation of payments from one note to pay any deficiency in payment of another note in unrelated "loan transactions" contrary to the terms of each such note which required payments to be allocated to the principal, interest, escrow and fees associated with only that specific "loan transaction."

17.2  Whether such "deficiency" was caused by the difference between the higher general terms of description of the note or the lower actual payment requirements from the "Plaintiff" is not know, despite numerous requests for accounting and the refusal of Defendants to provide any such information.

Complaint

18.   The Investment Banking Firm arranged through payment for a false, inflated appraisal of certificates and/or issuer of the certificates that would be sold to investors in much the same way as it had procured the false appraisal of the property the "secured" the "loan transaction."  In addition, insurance was purchased from proceeds of this transaction, credit default swaps were purchased from proceeds of this transaction, the investors investments were "oversold" to create a reserve pool from which the SPV could pay deficiencies in payments, and SPV created cross collateralization agreement s and over collateralization of the pool assets to assure payments of the investors, thus creating co-obligors on the payment stream due from Plaintiff on the subject "loan transaction".

19.   The pool assets, including the Plaintiff's subject "loan transaction" were pleged completely to the owners of the "asset-backed securities".  All the certificates were then transferred to a Seller who in turn sold the certificates in varying denominations, each of which had slightly different terms depending upon which segment of the pool (tranche) secured the investment.

20.   If there is a holder in due course of the Plaintiff's note arising from the subject "loan transaction", it is the investors who purchased said securities (certificates).  Some of said securities are held by the original purchaser thereof, others were sold at weekly auction markets, others were paid by re-sales of property that were "secured", others were paid from repayments, others were paid by sale at full price to the investment bank that originated the entire transaction, some of which might be held by the Federal Reserve as non-recourse collateral, and others might have been paid by one or more of the insurance, credit default swaps, cross guarantees or cross collateralization of the segment of the pool that secured the relevant

Complaint

investors who owned certificates backed by a pool of assets that included the subject "loan transaction".

21. It is doubtful that any of the Defendants have any knowledge or have made any efforts to determine whether the putative holders in due course have been paid in whole or in part. It can only be said with certainty that these **Defendants seek to enforce loan documents for which they have already been paid in full plus illegal fees for the participation in an illegal scheme.** These Defendants seek to add insult to injury by demanding ownership through non-judicial foreclosure of the property in addition to the receipt of payment in full long before any delinquency or default even allegedly occur.**(SEE EXHIBIT "B")**

22. In order for these Defendants to maintain legal standing in connection with the subject loan transaction they are required to show the entire chain of title of the note and the entire chain of title of the mortgage. They have refused to do this despite numerous requests, leading Plaintiff to conclude that the Defendants cannot produce such evidence of a complete chain of title or are intentionally withholding the information that would show breaks in such chain.

23. Plaintiff is left in the position of being in an adversary proceeding with ghost. While these Defendants have informally offered or considered providing indemnification for any third party claims, the fact remains that any relief awarded these defendants, any standing allowed to these defendants would expose Plaintiff to multiple claims and suits from an unknown number of parties and entities that all claim, possibly correct, to the holders in due course. Any grant of a certificate of title to an entity other than the Plaintiff creates an incurable defect in title.

24.   There is no recording of any document in the Sacramento County Recorder which predates the Defendant's attempt to initiate foreclosure and/or eviction which would authorize them to proceed.

## Significance of REMIC

25. Mortgage backed Securities (MBS) Certificates are "pass through Certificates" where the Trust has elected to be treated as **Real Estate Investment Conduit** (REMIC) to enjoy the tax exempt status allowed under 15 U.S.C. ss 806A-G.

25.1 REMIC regulations impose very strict limitations as to the nature of the investments a REMIC Trust may make (i.e. "permitted investments") and transactions which it may not undertake (i.e. "prohibited transactions")

25.2 Any violation of REMIC regulations has significant tax implications for the Trust, as well as all Certificate Holders.  For example, any income realized by the Trust from a "prohibited transaction" is taxed at 100%.

25.2.1 The REMIC regulations also provide that any entity that causes the REMIC regulations to be violated is liable to the Trust and the Certificate Holders for the entire amount of the tax.

25.3 Only income from "qualified mortgages" and "permitted investments" may enter a REMIC trust.

25.4 A "qualified mortgage" is an obligation (i.e. mortgage) which is principally secured by an interest in real property which (1) was transferred to the Trust on the startup date, (2) was purchased by the REMIC Trust within 3 months after the start-up date or (3) any qualified replacement mortgage.

25.5  Permitted investments are limited to:

25.5.1 Cash Flow Investments (i.e. temporary investment where the Trust holds money it has received from qualified mortgages pending distribution to the Certificate Holder);

25.5.2 Qualified Reserve Assets (i.e. any intangible property which is held for investment and is part of a reasonably required reserve to provide for full payment of expenses of the REMIC or amounts due on regular interest in the event of defaults on qualified mortgages or lower than the expected returns on cash flow investments.

25.5.2.1These investments are for much defined purposes and are to be passive in nature.  They must be "reasonably required".

25.5.3 Liquidation Proceeds from "foreclosed property" which is acquired in connection with the default or imminent default of a "qualified mortgage" held by the trust.

26.  In order to maintain REMIC status, the Trustee and the Servicers must ensure that the REMIC receives no income from any asset that is not a "Qualified Mortgage" or a "Permitted Investment".   26 U.S.C. ss806F(a)(2)(B).

26.1  Prohibited Transactions include the disposition of a qualified mortgage (except where the disposition is "incident to" the foreclosure, default, or imminent default of the mortgage); or the receipt of any income from an asset that is not a Qualified Mortgage or a Permitted Investment. 26 U.S.C. ss 806F(a)(2)(B).

26.2  Prohibited Transactions are taxed in an amount 100% of the REMIC's net income from such prohibited transactions. 26 U.S.C. ss 860F(a)(1).

26.3  Contributions of any "property" -e.g., cash, mortgages, - made to the REMIC are taxed at 100% of the contribution, except for the following exceptions:

Complaint
**Page**
**11**

26.3.1 Contributions to facilitate a "clean up call" (i.e. the redemption of a class of

26.3.2 regular interest, when by reason of prior payments with respect to those interest

26.3.3 the administrative cost associated with the servicing that class outweigh the

benefits

26.3.4 of maintaining the class) Reg. ss 1.860G-2(j)(1)

26.3.5 Any cash payment in the nature of guarantee, such as payments to the REMIC. Any violation of REMIC regulations will defeat the privileged tax status and will subject the REMIC to 100% taxation, plus penalties and interest.  These taxes and penalties are ultimately borne by the Certificate holders, under a surety bond, letter of credit or insurance policy.

26.3.6 Any cash contribution during the three month period after the start-up day; and Any cash contribution to a qualified reserve fund made by a holder of a residual interest.

27.  On a monthly basis, the Investment Banking firm and/or it's agent, servants or employees compiled, individually and in concert, oversaw and approved all the information contained in the Distribution Reports and electronically sent same to certain parties.

27.1   Based upon research performed by experts on behalf of the Plaintiff, the data regarding the number of bankruptcies, aggregate Special Servicing Fees, and aggregate Trust Fund Expenses was routinely incomplete, false, and/or misleading.

27.2   Further said report intentionally obfuscated the illegal allocation of payments, the failure to disclose payments, and the effect on the alleged obligation of the Plaintiff, to wit: despite numerous insurance products, credit default swaps, cross

1  collateralization, over collateralization and polling at multiple

2  levels, money received by some or all of these Defendants under the

3  pretense of it being a "Mortgage Payment" was in fact retained,

4  reserved, applied to non-performing loans to make them appear as though

5  they were performing loans, or paid as fees to the enterprise

6  Defendants described in this complaint.

7  27.3  **Based upon the failure of the Defendants to respond, Plaintiff**

8  **has every reason to believe that the party receiving the payments**

9  **(BofA) Is neither the holder in due course of the note nor the owner of**

10  **any rights under the mortgage provisions of the deed of trust.**

11  27.3.1  Further, Plaintiff has every reason to believe that her

12  payments are not being forwarded to the holder in due course of

13  the note nor to any other authorized party.

14  27.3.2  Accordingly Plaintiff is in jeopardy, to wit: the true

15  holder in due course and potentially dozens or even thousands of

16  third parties could come forward claiming an unsatisfied interest

17  in the promissory note and may or may not be subject to

18  Plaintiff's various affirmative defenses and counterclaims.

19  27.3.3  In fact, research has revealed that in various states,

20  such security interests are being purchased by speculators who

21  then seek to enforce said liability, preventing the Plaintiff from

22  claiming the most basic defense, to wit: payment exactly as

23  required by the terms of the note which was cashed by the

24  receiving party (**BofA**) Apparently without authority to do so.

25  27.3.4  Defendants have failed and refused reveal the true source

26  of funds for the alleged loan transaction, further preventing

27  Plaintiff's right of three-day rescission under the Truth in

28  Lending Act because the real lender has not been revealed and

therefore the Notice of Rescission by the Plaintiff has no
authorized addressee.

27.3.5  The fact that the "loan" was table-funded without a
disclosed source of funds and without disclosing tens of thousands
of dollars in fees all contrary to the requirements of state and
federal law was withheld from Plaintiff by Defendants and
continues to be withheld by them. But for the expenditure of time,
money and effort on research, Plaintiff would not have discovered
the various deceptions of the Defendants at the alleged loan
closing.

27.3.6  Plaintiff alleges the closing was an "alleged loan
closing" because in fact it was part of an undisclosed hidden
illegal scheme to issue unregulated securities (mortgage backed
securities) based upon the negotiation of non-negotiable notes,
the terms of which had been changed, altered, amended or modified
after the execution by the Plaintiff.

27.3.7  Defendants then purported to "negotiate" the note by
adding terms which allowed the proceeds of the note to be
allocated to the payment of the notes of other Plaintiffs and
adding co-obligors as aforementioned through insurance,
guarantees, additional collateralization and reserves all of which
were undisclosed, as aforementioned.

27.3.7.1    **The note was not negotiable because it was no longer
an unconditional promise to pay by the original
Plaintiff.** The terms had changed, adding conditions
to payment that were inherent in the "securitization
process" that Defendants fraudulently promoted.

27.3.8 Said "negotiation" of Plaintiff's note was in actuality the
theft of her identity to hide the vast number of "toxic waste

1                 used to hid e the high volume (and high profit) of

2                 toxic waste loans.

3      27.3.8.5    It was thus in the financial interest of the

4                 enterprise Defendants to create unrealistic and false

5                 market expectations, deceiving the public as a whole

6                 in specified geographical areas of the country that

7                 were identified by these enterprise  Defendants as

8                 targets.

9      27.3.8.6    Since these illegal profits were not disclosed, the

10                 Plaintiff is entitled to an accounting and a pro rate

11                 share of the profits obtained by the illegal,

12                 improper and undisclosed use of her name, credit

13                 rating and identity.

14      27.3.8.7    Based upon the opinion of Plaintiff's experts,

15                 **Plaintiff's share of said profits would be in excess**

16                 **of $1 million.**

17    28.   The distribution Reports are supposed to accurately reflect the

18 "financial health of the trust," and provide Certificate holders, with

19 important data such as the number of loans in bankruptcy, the aggregate

20 amount of special servicing fees, and the aggregate amounts of trust funds

21 expenses.  Each and every one of these categories is essential, in order to

22 assess its profits and loss potential in the REMIC entity.  Furthermore, this

23 data is used by bond rating agencies to assess the value of the Certificates.

24    29. Based upon the filings and information on the Plaintiff it appears

25 that no accurate accounting has ever been presented to anyone and that

26 therefore the identity and status of any putative holder in due course is

27 completely shrouded in secrecy enforced by these Defendants, their agents,

28 servants and employees.

29.1 Unreported repurchases of certificates or classes of certificates would and did result in a profit to the REMIC that went unreported, and which was not credited to Plaintiff where the repurchase was, as was usually the case, the far less than the original investment.

29.2  While the Plaintiff would never have entered into a transaction in which the true nature of this scheme was revealed, any profits, refunds, rebates, fees, points, cost or other income or gain should be credited on some basis to said Plaintiff including Plaintiff herein.

## GENERAL ALEGATIONS

30. The end result of the false and misleading representations and material omissions of Defendants as to the true nature of the mortgage loan actually being processed, which said Defendants had actual knowledge was in direct conflict with the original Uniform Residential Loan Application, early TIL, and Plaintiff's stated intentions and directions to said Defendants at the time of original application for the loan, fraudulently caused Plaintiff to execute predatory loan documents.

31.  At no time whatsoever did Defendants ever advise Plaintiff (nor, as far as Plaintiff can determine, any "investor" in certificates of mortgage-backed securities) that:

31.1 The mortgage loan being processed was not in her best interest;

31.2 The terms of the mortgage loan being processed were less favorable than the fixed-rate loan which Defendants previously advised Plaintiff that she qualified for;

31.3 That the adjustable rate mortgage loan was an inter-temporal transaction (transaction where terms, risks, or provisions at the commencement of the transactions differ at a later time) on which Plaintiff was providing cover form Defendants' illegal activities.

1      31.4  That Plaintiff would likely be placed in a position of default,

2      foreclosure, and deficiency judgment regardless of whether she met her

3      loan obligations once the true lender or true holder(s) in due course

4      appeared;

5      31.5 That the originating "lender", that being defendant **BofA**,

6      Had no intention of retaining ownership interest in the mortgage loan

7      or fully servicing same and in fact may have and probably had already

8      pre-sold the loan, prior to closing, to a third party mortgage

9      aggregator pursuant to previously executed documentation (Assumption

10     and Assignment Agreement, Pooling Services Agreement, etc. all executed

11     prior to Plaintiff's "loan closing")

12     31.6 That the mortgage loan was actually intended to be repeatedly sold

13     and assigned to multiple third parties, including one or more mortgage

14     aggregators and investment bankers (including but not limited to

15     Defendants DOES 1-10), for the ultimate purpose of bundling the

16     Plaintiff's mortgage with hundreds or perhaps thousands of others as

17     part of a companion, support, or other tranche in connection with the

18     creation of a REMIC security known as a Collateralized Mortgage

19     Obligation (CMO), also known as a "mortgage-backed security" to be sold

20     by a securities firm (and which in fact ended up as a collateral for

21     Asset-Backed Securities Certificates, created the same year as the

22     closing);

23     31.7 That the mortgage instrument and Promissory Note may be sold,

24     transferred, or assigned separately to separate third parties so the

25     "holder" of the Promissory Note may not be in privity with or have the

26     legal right to foreclose in the event of default;

27     31.8 That in connection with the multiple down line resale and

28     assignment of the mortgage and Promissory Note that assignees or

1    purchasers or the Note may make "pay-downs" against the Note which may

2    affect the true amount owed by Plaintiff on the note.

3    31.9 That a successive assignee or purchaser of the Note and Mortgage

4    my not, upon assignment or purchase, unilaterally impose property

5    insurance requirements different from those imposed as a condition of

6    the original loan (also known as prohibition against increased forced-

7    placed coverage) without the Plaintiff's prior notice and consent;

8    32. As a result of the closing and in connection therewith, Defendants

9    placed the Plaintiff into a sub-prime adjustable rate mortgage program, with

10   Defendants intentionally misleading Plaintiff and engaging in material

11   omissions by failing to disclose to Plaintiff the fact that the nature of the

12   mortgage loan application had been materially changed without Plaintiff's

13   knowledge or consent and Plaintiff was being placed into an adjustable rate

14   mortgage program despite not being fully qualified for such program.

15   33. Prior to the closing, Defendant **BofA** failed provide to Plaintiff the

16   preliminary disclosures required by the Truth-In-Lending Act pursuant to 12

17   CFR (also known as and referred to herein as "Regulation Z) sec. 226.17 and

18   18, and failed to provide the preliminary disclosures required by the Real

19   Estate Settlement Procedures Act (RESPA) pursuant to 24 FR sec. 3500.6 and

20   35007, otherwise known as the GFE.

21   34. Defendant **BofA** also intentionally failed and/or refused to provide

22   Plaintiff with various disclosures which would indicate to the Plaintiff that

23   the consumer credit contract entered into was void, illegal, and predatory in

24   nature due in part to the fact that the final TIL showed an "adjustable rate"

25   schedule of payments, but did not provide the proper disclosures of  the

26   actual contractually-due amounts and rates and did not actually disclose the

27   names of the entities (investors) of the real source of the funds for the

28   "loan transaction".

35. Defendants failed and/or refused to provide a HUD-1 Settlement Statement at the closing which reflected the true cost of the consumer credit transaction.  As Defendants failed to provide an accurate GFE or Itemization of Amount Financed (IOAF), there was no disclosure of a Yield Spread Premium ("YSP" which is required to be disclosed by the Truth-In-Lending Act) and thus no disclosure of the true cost of the loan.

36. As a direct and proximate result of these failures to disclose as required by the Truth-In-Lending Act, Defendant **BofA** received a YSP in a substantial amount, without preliminary disclosure, which is a per se violation of 12 CFR sec. 226.4(a), 226.17 and 18(d) and (c)(1)(iii).  The USP raised the interest rate which was completely unknown to or approved by the Plaintiff, as they did not receive the required GFE or IOAF.

37. In addition, the completely undisclosed YSP was not disclosed by Defendant in their broker contract, which contract was blank in the area as to fees to be paid to Defendant. This is an illegal kickback and violation of 12 USC sec. 2607 as well as State Law which gives rise to all damages claims for all combined broker fees, costs, and attorneys' fees.

38. The amount Financed within the TIL is also understated which is a material violation of 12 CFR sec. 226.17 and 18, in addition to 15 USC sec. 1602 (u), as the Amount Financed must be completely accurate with no tolerance.

39. Defendants were under numerous legal obligations as fiduciaries and had the responsibility for overseeing the purported loan consummation to insure that the consummation was legal, proper, and the Plaintiff received all Act and RESPA both before and after the closing.

40. Plaintiff, not being in the consumer lending, mortgage broker, or residential loan business, reasonably relied upon the Defendants to insure that the consumer credit transaction was legal, proper, and complied with all applicable laws, rules, and regulations.

imposed[?] which, by written agreement, is payable in more than four (4)

installments and was initially payable to the person the subject of the transaction, rendering Defendants "creditors" within the meaning of the Truth-In-Lending Act, 15 USC sec. 1602 (f) and Regulation Z sec, 226.2 (a)(17).

42. At the closing of the subject "loan transaction", Plaintiff executed Promissory Notes and Security Agreements in favor of Defendants as aforesaid. These transactions designated by Defendants as a Loan, extended consumer credit which was subject to a finance charge and which was initially payable to the Defendants.

43. As a part of the consumer credit transaction on the subject of the closing, Defendants retained a security interest in the subject property which was Plaintiff's Principal Residential Dwelling.

44. Defendants engaged in a pattern and practice of defrauding Plaintiff in that, during the entire life of the mortgage loan, Defendants failed to properly credit payments made; incorrectly calculated interest on the accounts; and have failed to accurately debit fees. At all times material,

45. Defendants had actual knowledge that the Plaintiff's accounts were not accurate but that Plaintiff would make further payments based on Defendants' inaccurate accounts.

46. Plaintiff made payments based on the improper, inaccurate, and fraudulent representations as to Plaintiff's accounts.

47. As a direct and proximate result of the actions of the Defendants set for the above, Plaintiff overpaid in interest.

Complaint
**Page**
**21**

1    48.   Defendants also utilized amount known to the Defendants to be

2    inaccurate to determine the amount allegedly due and owing for the purpose of

3    foreclosure.

4    49.   Defendants' violations were all material in nature under the Truth-

5    In-Lending Act.

6    50.   Said violations, in addition to the fact that Plaintiff did not

7    properly receive Notices of Right to Cancel, constitute violations of 15 USC

8    sec. 1635(a) and (b) and 12 CFR sec. 226.23(b), and are thus a legal basis

9    for and legally extend Plaintiff's right to exercise the remedy of

10   rescission.

11   51.   Defendants assigned the Note and Deed of Trust to parties who did

12   not take these instruments in good faith or without notice that the

13   instruments were invalid or that Plaintiff had a claim in recoupment.

14   Pursuant to ORC sec. 1303.32 (A)(2)(b)(c) and (f), Defendants are not a

15   holder in due course and is thus liable to Plaintiff, individually, jointly

16   and severally.

17   52.   On information and belief and given that the consumer credit

18   transaction was an inter-temporal transaction with multiple assignments as

19   part of an aggregation and the creation of a REMIC tranche itself a part of a

20   predetermined and identifiable CMO, all Defendants shared in the illegal

     proceeds of the transaction; conspired with each other to defraud the

21   Plaintiff out of the proceeds of the loan; acted in concert to wrongfully

22   deprive the Plaintiff of her residence; acted in concert and conspiracy to

23   essentially steal the Plaintiff home and/or convert the Plaintiff's home

     without providing Plaintiff reasonably equivalent value in exchange; and

24   conducted an illegal enterprise within the meaning of the RICO statute.

25   53.   On information and belief and given the volume of residential loan

26   transactions solicited and processed by the Defendants, the Defendants have

     engaged in two or more instances or racketeering activity involving different

27   victims but utilizing the same method, means, mode, operation, and enterprise

     with the same intended result.

28

# Claims for Relief

## COUNT 1: VIOLATIONS OF HOME OWNERSHIP
## EQUITY PROTECTION ACT
## (HOEPA)

54.   Plaintiff reaffirms and re-alleges the above paragraphs 1-53 hereinabove as if set forth more fully herein below.

55.   In 1994, Congress enacted the Home Ownership Equity Protection Act (HOEPA) which is codified at 15 USC sec. 1639 et seq. with the intention of protecting homeowners from predatory lending practices targeted at vulnerable consumers.  HOEPA requires lenders to make certain defined disclosures and prohibits certain terms from being included in home loans.  In the event of noncompliance, **HOEPA imposes civil liability for rescission and statutory and actual damages.**

56.   Plaintiff is a "consumer" and each Defendant is a "creditor" as defined by HOEPA.  In the mortgage loan transaction at issue here, Plaintiff was required to pay excessive fees, expenses, and costs which exceeded more than 10% of the amount financed.

57.   Pursuant to HOEPA and specifically 15 USC sec. 1639(a)(1), each Defendant is required to make certain disclosures to the Plaintiff which are to be made conspicuously and in writing no later than three (3) days prior to the closing.

58.   In the transaction at issue, Defendants were required to make the following disclosure to Plaintiff by **no later than three (3) days prior to said closing:**

    58.1  "You are not required to complete this agreement merely because you have received these disclosures or have signed a loan application.  If you obtain this loan, the lender will have a mortgage on your home.  You could lose your home and any money you have put into it, if you do not meet your obligation under the loan".

59.   Defendants violated HOEPA by numerous acts and material omissions, including but not limited to:

    59.1  (a) failing to make the foregoing disclosure in a conspicuous fashion;

59.2 (b) engaging in a pattern and practice of extending credit to Plaintiff without regard to her ability to repay in violation of 15 USC sec. 1639(h).

60.  By virtue of the Defendants' multiple violations of HOEPA, **Plaintiff has a legal right to rescind** the consumer credit transaction the subject of this action pursuant to 15 USC sec. 1635.  This Complaint is to be construed, for these purposes, as formal and public notice of Plaintiff's Notice of Rescission of the mortgage and note.

61. Defendants further violated HOEPA by failing to make addition disclosures, including but not limited to Plaintiff not receiving the required disclosure of the right to rescind the transaction;

62. the failure of Defendants to provide an accurate **TILA** disclosure; and the amount financed being understated.

63. As a direct consequence of and in connection with Plaintiff's legal and lawful exercise of his right of rescission, the true "lender" is required, within twenty (20) days of the Notice of Rescission, to:

63.1     (a) desist from making any claims for finance charges in the transaction;

63.2     (b) **return all monies paid by Plaintiff in connection with the transaction to the Plaintiff;**

63.3     (c) Satisfy all security interests, including mortgages, which were acquired in the transaction.

64. Upon the true "lenders" full performance of its obligations under HOEPA, Plaintiff shall tender all sums to which the true lender is entitled.

65. Based on Defendants' HOEPA violations, each of the Defendants is liable to the Plaintiff for the following, which Plaintiff demand as relief:

65.1     (a) rescission of the mortgage loan transactions;

65.2  (b) termination of the mortgage and security interest in the property the subject of the mortgage loan documents created in the transactions;

65.3  (c) return of any money or property paid by the Plaintiff including all payments made in connection with the transactions;

65.4  (d) an amount of money equal to twice the finance charge in connection with the transactions;

65.5  (e) relinquishment of the right to retain any proceeds; and

65.6  (f) actual damages in an amount to be determined at trial, including

65.7  attorneys' fees.

## COUNT II: VIOLATIONS OF REAL ESTATE SETTLEMENT
## PROCEDURES ACT
### (RESPA)

66. Plaintiff reaffirms and re-alleges paragraphs 1-53 above herein as if specifically set forth more fully herein below.

67. As mortgage lenders, Defendants are subject to the provisions of the Real Estate Settlement Procedures Act ("RESPA"), 12 USC sec. 2601 et seq.

68. In violation of 12 USC sec. 2607 and in connection with the mortgage loan to Plaintiff, Defendants accepted charges for the rendering of real estate services which were in fact charges for other than services actually performed.

69. As a result of the Defendants' violations of RESPA, Defendants are liable to Plaintiff in an amount equal to three (3) times the amount of charges paid by Plaintiff for "settlement services" pursuant to 12 USC sec. 2607 (d)(2).

COUNT III: VIOLATIONS OF FEDERAL TRUTH-IN-LENDING ACT (TILA)

70. Plaintiff reaffirms and re-alleges paragraphs 1-53 above hereinabove as if set forth more fully hereinbelow.

71. Defendants failed to include and disclose certain charges in the finance charge shown on the TIL statement, which charges were imposed on Plaintiff incident to the extension of credit to the Plaintiff and were required to be disclosed pursuant to 15 USC sec. 1605 and Regulation Z.

72. sec. 226.4, thus resulting in an improper disclosure of finance charges in violation of 15 USC sec. 1601 et seq., Regulation Z sec. 226.18(d). **Such undisclosed charges include a sum identified on the Settlement Statement listing the amount financed which is different from the sum listed on the original Note.**

73. By calculating the annual percentage rate ("APR") based upon improperly calculated and disclosed amounts, Defendants are in violation of 15 USC sec. 1601 et seq., Regulation Z sec. 226.18©, 18(d), and 22.

74. Defendants' failure to provide the required disclosures provides Plaintiff with the right to rescind the transaction, and Plaintiff, through this public Complaint which is intended to be construed, for purposes of this claim, as a formal Notice of Rescission, hereby elect to rescind the transaction.

## COUNT IV: VIOLATION OF FAIR CREDIT REPORTING ACT

75. Plaintiff reaffirms and re-alleges paragraphs 1- above as if set forth more fully herein below.

76. At all times material, Defendants qualified as a provider of information to the Credit Reporting Agencies, including but not limited to Experian, Equifax, and Trans Union, under the Federal Fair Credit Reporting Act. 65.  Defendants wrongfully, improperly, and illegally reported negative information as to the Plaintiff to one or more Credit Reporting Agencies, resulting in Plaintiff having negative information on their credit reports and the lowering of her FICO scores.

    76.1  The negative information included but was not limited to an excessive amount of debt into which Plaintiff was tricked and deceived into signing.

    76.2  Notwithstanding the above, Plaintiff has paid each and every payment on time from the time of the closing of the loan until Plaintiff's default.

77. Pursuant to 15 USC sec. 1681(s)(2)(b), Plaintiff is entitled to maintain a private cause of action against Defendants for an award of damages in an amount to be proven at the time of trial for all violations of the Fair Credit Reporting Act which caused actual damages to Plaintiff, including emotional distress and humiliation.

78. Plaintiff is entitled to recover damages from Defendants for negligent non-compliance with the Fair Credit Reporting Act pursuant to 15 USC sec. 1681(o).

79. Plaintiff is also entitled to an award of punitive damages against Defendants for their willful noncompliance with the Fair Credit Reporting Act pursuant to 15 USC sec. 1681(n)(a)(2) in an amount to be proven at time of trial.

## COUNT V: FRAUDULENT MISREPRESENTATION

80. Plaintiff reaffirms and re-alleges paragraphs 1-53 above as if set forth more fully herein below.

81. Defendants knowingly and intentionally concealed material information from Plaintiff which is required by Federal Statutes and Regulations to be disclosed to the Plaintiff both before and at the closing.

82. Defendants' also materially misrepresented material information to the Plaintiff with full knowledge by Defendants that their affirmative representations were false, fraudulent, and misrepresented the truth at the time said representations were made.

83. Under the circumstances, the material omissions and material misrepresentations of the Defendants were malicious.

84. Plaintiff not being an investment banker, securities dealer, mortgage lender, mortgage broker, or mortgage lender, reasonably relied upon the representations of the Defendants in agreeing to execute the mortgage loan documents.

85. Had Plaintiff known of the falsity of Defendants' representations, Plaintiff would not have entered into the transactions the subject of the action.

86. As a direct and proximate cause of the Defendants' material omissions and material misrepresentations, Plaintiff has suffered damages.

## COUNT VI: BREACH OF FIDUCIARY DUTY

87. Plaintiff reaffirms and re-alleges paragraphs 1-53 above as if set forth more fully herein below.

88. Defendants, by their actions in contracting to provide mortgage loan services and a loan program to Plaintiff which was not only to be best suited to the Plaintiff giver her income and expenses but by which Plaintiff would also be able to satisfy her obligations without risk of losing her home, were "fiduciaries" in which Plaintiff reposed trust and confidence, especially given that Plaintiff was not and is not an investment banker, securities dealer, mortgage lender, mortgage broker, or mortgage lender.

89. Defendants breached their fiduciary duties to the Plaintiff by fraudulently inducing Plaintiff to enter into a mortgage transaction which was contrary to the Plaintiff's stated intentions; contrary to the Plaintiff's interests; and contrary to the Plaintiff's preservation of her home.

90. As a direct and proximate result of the Defendants' breaches of their fiduciary duties, Plaintiff has suffered damages.

91. Under the totality of the circumstances, the Defendants' actions were willful, wanton, intentional, and with a callous and reckless disregard for the rights of the Plaintiff justifying an award of not only actual compensatory but also exemplary punitive damages to serve as a deterrent not only as to future conduct of the named Defendants herein, but also to other persons or entities with similar inclination.

## COUNT VII: UNJUST ENRICHMENT

92. Plaintiff reaffirms and re-alleges paragraphs 1-53 above as if set forth more fully herein below.

93. Defendants had an implied contract with the Plaintiff to ensure that Plaintiff understood all fees which would be paid to the Defendants to obtain credit on Plaintiff's behalf and to not charge any fees which were not related to the settlement of the loan and without full disclosure to Plaintiff.

94. Defendants cannot, in good conscience and equity, retain the benefits from their actions of charging a higher interest rate, fees, rebates, kickbacks, profits (including but not limited to from resale of mortgages and notes using Plaintiff's identity, credit score and reputation without consent, right, justification or excuse as part of an illegal enterprise scheme) and gains and YSP fee unrelated to the settlement services provided at closing.

95. Defendants have been unjustly enriched at the expense of the Plaintiff, and maintenance of the enrichment would be contrary to the rules and principles of equity.

95.1  Defendants have also been additionally enriched through the receipt of PAYMENT from third parties including but not limited to investors, insurers, other Plaintiff, the United States Department of the Treasury, the United States Federal Reserve, and Bank of America, N.A.

96. Plaintiff thus demands restitution from the Defendants in the form of actual damages, exemplary damages, and attorneys' fees.

## COUNT VIII: CIVIL CONSPIRACY

97. Plaintiff reaffirms and re-alleges paragraphs 1-53 above as if set forth more fully herein below.

98. In connection with the application for and consummation of the mortgage loan the subject of this action, Defendants agreed, between and among themselves, to engage in actions and a course of conduct designed to further an illegal act or accomplish a legal act by unlawful means, and to commit one or more overt acts in furtherance of the conspiracy to defraud the Plaintiff including but not limited to the commencement of foreclosure by MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. hereinafter referred as "MERS" and the duly substituted trustee, NORTHWEST TRUSTEE SERVICES, INC. hereinafter referred as "NORTHWEST".

99. Defendants agreed between and among themselves to engage in the conspiracy to defraud for the common purpose of accruing economic gains for themselves at the expense of and detriment to the Plaintiff.

100. The actions of the Defendants were committed intentionally, willfully, wantonly, and wit: reckless disregard for the rights of the Plaintiff.

101. As a direct and proximate result of the actions of the Defendants in combination resulting in fraud and breaches of fiduciary duties, Plaintiff has suffered damages.

102. Plaintiff thus demands an award of actual, compensatory, and punitive damages.

## COUNT IX: CIVIL RICO

103. Plaintiff reaffirms and re-alleges paragraphs 1-53 above as set forth more fully herein below.

104. Defendants are "persons" as defined by ORC sec. 2933.21 (G).

105. The conspiracy the subject of this action has existed from date of application to the present, with the injuries and damages resulting there from being continuing.

106. Defendants' actions and use of multiple corporate entities, multiple parties, and concerted and predetermined acts and conduct specifically designed to defraud Plaintiff constitutes and "enterprise", with the aim and objective of the enterprise being to perpetrate a fraud upon the Plaintiff through the use of intentional nondisclosure, material misrepresentation, and creation of fraudulent loan documents.

107. Each of the Defendants is an "Enterprise Defendant".

108. As a direct and proximate result of the actions for the Defendants, Plaintiff has and continue to suffer damages.

109. Whenever reference is made in this Complaint to any act of any defendant(s) allegation shall mean that each defendant acted individually and jointly with the other defendants.

110. Any allegation about acts of any corporate or other business defendant means that the corporation or other business did the acts alleged through its officers, directors, employees, agents and/or representatives while they were acting within the actual or ostensible scope of their authority.

111. At all times, each defendant committed the acts, caused or directed others to commit the acts, or permitted others to commit the acts alleged in this Complaint. Additionally some or all of the defendants acted as the agent of the other defendants, and all of the defendants acted within the scope of their agency if acting as an agent of another.

112. At all relevant times, each defendant knew or realized that the other defendants were engaging in or planned to engage in the violations of law alleged in the Complaint. Knowing or realizing that other defendants were engaging in or planning to engage in unlawful conduct, each defendant nevertheless facilitated the commission of those unlawful acts. Each defendant intended to and did encourage, facilitate, or assist in the commission of the unlawful acts, and thereby aided and abetted the other defendants in the unlawful conduct.

113. At all relevant times, Defendants have engaged in a conspiracy, common enterprise, and common course of conduct, the purpose of which is and was to engage in the violations of law alleged in this Complaint. This conspiracy, common enterprise, and common course of conduct continues to the present.

COMPLAINT TO QUIET TITLE TO REAL PROPERTY

114. Plaintiff reaffirms and re-alleges paragraphs 1-53 above as set for the more fully herein below.

115. Plaintiff has sent or has caused to be sent notice of her intent to rescind the subject loan transaction but only sent those notices to the only entities that have been disclosed. Hence, without this action, neither the rescission nor the reconveyance which the Plaintiff is entitled to file (as attorney in fact for the originating lender) and will file contemporaneously with this complaint, gives Plaintiff full and clear title to the property.

116. The real party in interest on the lender s side may be the owner of the asset backed security issued by the SPV, the insurer through some claim of equitable interest, or the Federal Government through the United States Department of the Treasury or the Federal Reserve. The security is a "securitized" bond deriving its value from the underlying mortgages of which the subject mortgage is one. Thus Plaintiff is entitled to Quiet Title against Defendants, clearing title of the purported subject mortgage encumbrance.

117. Plaintiff is ignorant of the true names and capacities of defendants sued herein as DOES inclusive, and therefore sue these defendants by such fictitious names. Plaintiff will amend this complaint to allege their true names and capacities when ascertained.

118. Plaintiff is informed and believes and thereupon alleges that and each of the Defendants claim or might claim an interest in the property adverse to plaintiff herein. However, the claim of said Defendants is

1  without any right whatsoever, and said Defendant(s) has no legal or equitable
2  right, claim, or interest in said property.

3      119. Plaintiff therefore seeks  a declaration that the title to the
   subject property is vested in Plaintiff alone and that the defendants herein,
4  and each of them, be declared to have no estate, right, title or interest in
5  the subject property and that said defendants and each of them, be forever
   enjoined from asserting any estate, right title or interest in the subject
6  property adverse to Plaintiff herein.

7      120. Plaintiff has a pending forensic audit of the specific TILA
8  violations and will ask leave of court to amend the filing of this complaint
   to incorporate the result as Exhibit C.

9      121. WHEREFORE, Plaintiff and pray this Court will enter judgment
10 against defendants and each of them, as follow:

11         121.1 For an order compelling said Defendant, and each of them, to
           transfer or release legal title and alleged encumbrances thereon and
12         possession of the subject property to Plaintiff herein;

13         121.2 For a declaration and determination that Plaintiff is the
14         rightful holder of title to the property and that Defendants herein,
           and each of them, be declared to have no estate, right, title or
15         interest in said property;

16         121.3 For a judgment forever enjoining said defendants, and each of
17         them, from claiming any estate, right, title or interest in the subject
           property.

18         121.4 For costs of suit herein incurred;

19         121.5 For such other and further relief as the court may deem proper
20         USURY and FRAUD

21         121.6 Plaintiff reaffirms and re-alleges the above paragraphs 1-53
           herein above as if set forth more fully herein below.  The subject
22         loan, note, and mortgage were structured so as to create the appearance
23         of a higher value of the real property than the actual fair market
           value.

24         121.7 Plaintiff is informed and believes and thereon alleges that, at
25         all times herein mentioned, each of the defendants sued herein was the
           agent and employee of each of the remaining defendants and was at all
26         times acting within the purpose and scope of such agency and
27         employment.

28         121.8 Defendants disguised the transaction to create the appearance of
           the lender being a properly chartered and registered financial

institution authorized to do business and to enter into the subject
transaction when in fact the real party in interest was not disclosed
to Plaintiff, as aforesaid, and neither were the various fees, rebates,
refunds, kickbacks, profits and gains of the various parties who
participated in this unlawful scheme.

121.9 Said real party in interest, i.e., the source of funding for the
loan and the person to whom the note was transmitted or eventually
"assigned" was neither a financial institution nor an entity or person
authorized, chartered or registered to do business in this State nor to
act as banking, lending or other financial institution anywhere else.

121.10      As such, this fraudulent scheme, (which was in actuality a
plan to trick the Plaintiff into signing what would become a negotiable
security used to sell unregulated securities under fraudulent and
changed terms from the original note) was in fact a sham to use
Plaintiff's interest in the real property to collect interest in excess
of the legal rate.

121.11      The transaction involved a loan of money pursuant to a
written agreement, and as such, subject to the rate limitation set
forth under state and federal law.  The "formula rate" referenced in
those laws was exceeded by a factor in excess of 10 contrary to the
applicable law and contrary to the requirements for disclosure under
TILA and HOEPA.

121.13      **Under Applicable Law Plaintiff is also entitled and demand
a PERMANENT INJUNCTION** be entered against the Defendants (a) preventing
them from taking any action or making any report in furtherance of
collection on this alleged debt which was usurious, as a foresaid (b)
requiring the records custodian of the county in which the alleged
mortgage and other instruments are recorded to remove same from the
record, (c) allowing the filing of said order in the office of the
clerk of the property records where the subject property, "Loan
transaction" and any other documents relating to this transaction are
located and (d) dissolving any lis pendens or notice of pendency
relating to the Defendants purported claim.

1

## RELIEF SOUGHT

2

WHEREFORE, having set forth numerous legally sufficient causes of

3

actions against the Defendants, **Plaintiff prays for the entry of Final**

**Judgment against all Defendants jointly and severally in an amount not**

4

yet quantified but to be proven at trial and such other amounts to be

5

proven at trial, and for costs and attorneys' fees; that the Court find

6

that the transactions the subject of this action are illegal and are

deemed void; that the foreclosure which was instituted be deemed and

7

declared illegal and void and that further proceedings in connection

8

with the foreclosure be enjoined; **and for any other and further relief**

9

**which is just and proper.**

DEMAND FOR JURY TRIAL

10

Plaintiff demand trial by jury of all matters so triable as a matter of

11

right.

12

13

Respectfully submitted,

14

15

_Michael Dovgan_ (signature)

16

**Michael Dovgan**

17

18

19

20

21

22

23

24

25

26

27

28

1
2
3
4

# VERIFICATION

5   I/We, **Michael Dovgan**, am/are The Plaintiff(s) in the above-entitled action.

6   I have read the foregoing and know the contents thereof.  The same is true of

7   my own knowledge, except as to those matters which are therein alleged on

8   information and belief, and as to those matters, I believe it to be true.  I

9   declare under penalty of perjury that the foregoing is true and correct and

10  that this declaration was executed at Sacramento, California.

11

12  DATED:  6/4/10

13
14
15
16
17  Michael Dovgan
18
19
20
21
22
23
24
25
26
27
28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT "A"

PARCEL NO.: 219-0440-027-0000

## QUITCLAIM DEED
(Continued)

Escrow No.:     07000437JMS

Title Order No.:

## EXHIBIT A

Lot 655, as shown on the plat of "Larchmont Chardonnay Unit No. 7", recorded in the office of the recorder of Sacramento County in Book 140 of maps, map no. 16.

## MAIL TAX STATEMENTS AS DIRECTED ABOVE
QUITCLAIM DEED

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT "B"

# Preforeclosure Activity Report

Subject Property

**7229 La Tour Dr**
**Sacramento, CA 95842-1722**
**Sacramento County**



 Preforeclosure

**General Info:**

| | |
|---|---|
| Tax ID : **219-0440-027-0000** | Subdivision : **Larchmont Chardonnay 07** |
| Foreclosure Filing Date : **08/04/2009** | Deault Amount : **$15,074** |
| Document Type : **Notice Of Default** | Foreclosure Recording Date : **08/06/2009** |
| Foreclosure Book Number : **090806** | Foreclosure Page Number : **000242** |
| First Missed Payment Date : **12/01/2008** | Foreclosure Stage : **Preforeclosure** |

**Party Info:**

| | |
|---|---|
| Last Payment Date : **08/04/2009** | Defendant Name 1 : **Dovgan Michael** |
| Trustee Name : **Northwest Trustee Services Inc** | Trustee Phone : **(714) 277-4888** |
| Trustee Sale Order No. : **7662-21571** | Foreclosure Lender Name : **Bank Of America** |
| Trustee Address : **505 N Tustin Ave #243** | Trustee State : **CA** |
| Trustee Zip : **92705** | Trustee City : **Santa Ana** |

**Mortgage Info:**

| | |
|---|---|
| Original Mortgage Amount : **$176,400** | Original Mortgage Recording Date : **08/31/2007** |
| Original Book & Page : **070831-000197** | Default Amount : **$15,074** |
| Last Payment Date : **08/04/2009** | |

**Bank Owned Info:**

Owner Name : **Dovgan Micheal**

Courtesy of Larysa Yevtushenko
Metrolist Services

The data within this report is compiled by First American CoreLogic from public and private sources. If desired, the accuracy of the data contained herein can be independently verified by the recipient of this report with the applicable county or municipality.

# EXHIBIT 2

MC-050

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| — Michael Dovgan<br>7229 La Tour Drive<br>Sacramento CA 95842<br><br>TELEPHONE NO. 909-890-9192    FAX NO. *(Optional)* 909-382-9956<br>E-MAIL ADDRESS *(Optional):*<br>ATTORNEY FOR *(Name):* Michael Dovgan | FILED/ENDORSED<br><br>JUN 14 2010<br><br>By _____ L Whitfield<br>Deputy Clerk |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF   Sacramento
STREET ADDRESS: 720-9th Street
MAILING ADDRESS: Same
CITY AND ZIP CODE: Sacramento 95814
BRANCH NAME: Gordon Schaber Downtown Court House

CASE NAME:
Dovgan V. Bank of America N.A. ET. AL.

| SUBSTITUTION OF ATTORNEY—CIVIL<br>(Without Court Order) | CASE NUMBER:<br>34-2010-00079567 |
|---|---|

THE COURT AND ALL PARTIES ARE NOTIFIED THAT *(name):* Michael Dovgan     makes the following substitution:

1. Former legal representative   ☑ Party represented self   ☐ Attorney *(name):*
2. New legal representative   ☐ Party is representing self*   ☐ Attorney
   a. Name: Timothy L. McCandless     b. State Bar No. *(if applicable):* 147715
   c. Address *(number, street, city, ZIP, and law firm name, if applicable):*
      1881 Business Center Drive Suite 9A
      San Bernardino CA 92408
   d. Telephone No. *(include area code):* (909)890-9192
3. The party making this substitution is a   ☑ plaintiff  ☐ defendant  ☐ petitioner  ☐ respondent  ☐ other *(specify):*

---

**\*NOTICE TO PARTIES APPLYING TO REPRESENT THEMSELVES**

- Guardian
- Conservator
- Trustee
- Personal Representative
- Probate fiduciary
- Corporation
- Guardian ad litem
- Unincorporated association

If you are applying as one of the parties on this list, you may NOT act as your own attorney in most cases. Use this form to substitute one attorney for another attorney. SEEK LEGAL ADVICE BEFORE APPLYING TO REPRESENT YOURSELF.

---

**NOTICE TO PARTIES WITHOUT ATTORNEYS**
A party representing himself or herself may wish to seek legal assistance. Failure to take timely and appropriate action in this case may result in serious legal consequences.

---

4. I consent to this substitution.
   Date: June 14,2010
   Michael Dovgan
   _____
   (TYPE OR PRINT NAME)      ▶ *Michael Dovgan* (SIGNATURE OF PARTY)

5. ☑ I consent to this substitution.
   Date: June 14,2010
   Michael Dovgan
   _____
   (TYPE OR PRINT NAME)      ▶ *Michael Dovgan* (SIGNATURE OF FORMER ATTORNEY)

6. ☑ I consent to this substitution.
   Date: June 14,2010
   Timothy L. McCandless, Esq
   _____
   (TYPE OR PRINT NAME)      ▶ *Tim McCandless* (SIGNATURE OF NEW ATTORNEY)

(See reverse for proof of service by mail)      Page 1 of 2

| Form Accepted For Mandatory Use<br>Judicial Council of California<br>MC-050 [Rev. January 1, 2007] | SUBSTITUTION OF ATTORNEY—CIVIL<br>(Without Court Order) | Code of Civil Procedure, §§ 284(1), 285,<br>Cal. Rules of Court, rule 3.1362<br>www.courtinfo.ca.gov |
|---|---|---|

American LegalNet, Inc.
www.FormsWorkflow.com

MC-050

| CASE NAME: | CASE NUMBER: |
|---|---|
| Dovgan V. Bank of America N.A. ET. AL. | 34-2010-00079567 |

### PROOF OF SERVICE BY MAIL
#### Substitution of Attorney—Civil

**Instructions:** *After having all parties served by mail with the Substitution of Attorney—Civil, have the person who mailed the document complete this Proof of Service by Mail. An unsigned copy of the Proof of Service by Mail should be completed and served with the document. Give the Substitution of Attorney—Civil and the completed Proof of Service by Mail to the clerk for filing. If you are representing yourself, someone else must mail these papers and sign the Proof of Service by Mail.*

1. I am over the age of 18 and not a party to this cause. I am a resident of or employed in the county where the mailing occurred. My residence or business address is *(specify)*:

   1881 Business Center Drive Suite 9A San Bernardino CA 92408

2. I served the Substitution of Attorney—Civil by enclosing a true copy in a sealed envelope addressed to each person whose name and address is shown below and depositing the envelope in the United States mail with the postage fully prepaid.

   (1) Date of mailing: June 14, 2010     (2) Place of mailing *(city and state)*: San Bernardino CA

3. I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: June 14,2010

Tessa Wilkerson

_Tessa Wilkerson_

(TYPE OR PRINT NAME)                                    (SIGNATURE)

### NAME AND ADDRESS OF EACH PERSON TO WHOM NOTICE WAS MAILED

4. a. Name of person served:  Bank Of America NA
   b. Address *(number, street, city, and ZIP)*:
      9000 SouthSide Blvd
      Jacksonville, FL 32256
   c. Name of person served:   Northwest Trustee Services, INC
   d. Address *(number, street, city, and ZIP)*:
      505 N. Tustin Ave # 243
      Santa Ana, CA 92705

   e. Name of person served:
   f. Address *(number, street, city, and ZIP)*:



   g. Name of person served:
   h. Address *(number, street, city, and ZIP)*:



   i. Name of person served:
   j. Address *(number, street, city, and ZIP)*:



   ☐ List of names and addresses continued in attachment.

**SUBSTITUTION OF ATTORNEY—CIVIL**
**(Without Court Order)**

# EXHIBIT 3

1    TIMOTHY L. MCCANDLESS, ESQ. SBN 147715
     LAW OFFICES OF TIMOTHY L. MCCANDLESS
2    1881 Business Center Drive, Suite 9A
     San Bernardino, CA 92408
3
     (909) 890-9192 Telephone
4    (909) 382-9956 Facsimile
5
     Attorney for *Plaintiff,*
6    *Michael Dovgan*

7              **SUPERIOR COURT FOR THE STATE OF CALIFORNIA**

8                  **IN AND FOR COUNTY OF SACRAMENTO**

9

10   *Michael Dovgan*                    CASE NO: 34-2010-00079567

11                                       NOTICE OF LIS PENDENS

12                    Plaintiff,

13
     V.
14

15   BANK OF AMERICA, N.A.,
     NORTHWEST TRUSTEE SERVICES, INC
16

17   and DOES 1 through 10 inclusive

18                    Defendants.

19   ───────────────────────────────────────────────
                    **NOTICE OF PENDENCY ACTION**
20

21   Notice is given that the above-entitled action was filed in the above-entitled court by Michael
     Dovgan
22

23   ["Plaintiff"] against, BANK OF AMERICA, N.A., NORTHWEST TRUSTEE SERVICES, INC

24
     and DOES 1 through 10 inclusive Defendant (s). The action affects the title to a specific parcel of
25

26   Real Property and the right to lawful possession of the same, the property location is: 7229 La

27   Tour Drive, Sacramento California 95842

28

                                  **1**
                          **NOTICE OF PENDENCY**

And whose Legal description is as follows:

LOT 655, AS SHOW ON THE PLAT OF "LARCHMONT CHARDONNAY UNIT NO. 7", RECORDED IN THE OFFICE OF THE RECORDER OF SACRAMENTO COUNTY IN BOOK 140 OF MAPS, MAP NO.16.

APN: 219-0440-027-0000

The natures of the claims are, (i) DECLARATORY REFLIEF (ii) To set aside a wrongful foreclosure (iii) FRAUD, (iv) Slander of Title, (v) Statutory Violations of RESPA (vi) Defective Foreclosure, Trustee's Deed is invalid as not being "Duly Perfected" pursuance to Civil Code 2924.

Dated: June 14, 2010

LAW OFFICES OF TIMOTHY L. MCCANDLESS

Timothy L. McCandless, Attorney for Plaintiff(s)

Michael Dovgan

2
NOTICE OF PENDENCY

<u>2010 ALL CAPACITY ACKNOWLEDGMENT</u>

**STATE OF CALIFORNIA**

**COUNTY OF SAN BERNARDINO**

On June 14, 2010, before me, <u>E Andre Gilbert</u>  NOTARY PUBLIC, personally appeared <u>Timothy L. McCandless</u>, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledgment to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraphs is true and correct.

**WITNESS my hand and official seal.**

(seal)

# EXHIBIT 4

MC–050

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)* | FOR COURT USE ONLY |
|---|---|
| Timothy L. McCandless, Esq. SBN 147715<br>1881 Business Center Drive Suite 9A<br>San Bernardino, CA 94553 | |

TELEPHONE NO (909)890-9192   FAX NO *(Optional)* (909)382-9956
E-MAIL ADDRESS *(Optional)* Tmvictorvillelaw@gmail.com
ATTORNEY FOR *(Name)* Michael Dovgan

FILED
ENDORSED

JUL - 1 2010

By _____
Deputy Clerk

SUPERIOR COURT OF CALIFORNIA, COUNTY OF  Sacramento
STREET ADDRESS 720 9th Street
MAILING ADDRESS Same
CITY AND ZIP CODE Sacramento CA, 95814
BRANCH NAME Gordan D. Schaber Sacramento County Courthouse

CASE NAME
Dovgan V. Bank of America N.A. ET. AL.

**SUBSTITUTION OF ATTORNEY—CIVIL**
**(Without Court Order)**

CASE NUMBER
34-2010-00079567

THE COURT AND ALL PARTIES ARE NOTIFIED THAT *(name)* Michael Dovgan    makes the following substitution

1  Former legal representative ☐ Party represented self ☑ Attorney *(name)* Timothy L. McCandless, Esq.
2  New legal representative ☑ Party is representing self* ☐ Attorney
   a  Name Michael Dovgan    b  State Bar No *(if applicable)*
   c  Address *(number, street, city, ZIP, and law firm name, if applicable)*
      7229 La Tour Drive
      Sacramento CA 95842
   d  Telephone No *(include area code)*
3  The party making this substitution is a  ☑ plaintiff ☐ defendant ☐ petitioner ☐ respondent ☐ other *(specify)*

---

**\*NOTICE TO PARTIES APPLYING TO REPRESENT THEMSELVES**

| • Guardian | • Personal Representative | • Guardian ad litem |
|---|---|---|
| • Conservator | • Probate fiduciary | • Unincorporated |
| • Trustee | • Corporation | association |

If you are applying as one of the parties on this list, you may NOT act as your own attorney in most cases. Use this form to substitute one attorney for another attorney. SEEK LEGAL ADVICE BEFORE APPLYING TO REPRESENT YOURSELF.

---

**NOTICE TO PARTIES WITHOUT ATTORNEYS**
A party representing himself or herself may wish to seek legal assistance. Failure to take timely and appropriate action in this case may result in serious legal consequences.

---

4  I consent to this substitution
   Date June 30, 2010
   Michael Dovgan
   _____
   (TYPE OR PRINT NAME)

   ► _____
   (SIGNATURE OF PARTY)

   RECEIVED
   JUL - 1 2010
   CIVIL

5  ☑  I consent to this substitution
   Date June 30, 2010
   Timothy L. McCandless, Esq.
   _____
   (TYPE OR PRINT NAME)

   ► _____
   (SIGNATURE OF FORMER ATTORNEY)

6  ☑  I consent to this substitution
   Date June 30, 2010
   Michael Dovgan
   _____
   (TYPE OR PRINT NAME)

   ► _____
   (SIGNATURE OF NEW ATTORNEY)

(See reverse for proof of service by mail)    Page 1 of 2

Form Adopted For Mandatory Use
Judicial Council of California
MC-050 [Rev January 1, 2007]

**SUBSTITUTION OF ATTORNEY—CIVIL**
**(Without Court Order)**

American LegalNet, Inc
www.FormsWorkflow.com

Code of Civil Procedure, §§ 284(1), 285,
Cal Rules of Court, rule 3 1362
www.courtinfo.ca.gov

MC–050

| CASE NAME | CASE NUMBER |
|---|---|
| Dovgan V. Bank of America N.A. ET. AL. | 34-2010-00079567 |

## PROOF OF SERVICE BY MAIL
### Substitution of Attorney—Civil

**Instructions:** *After having all parties served by mail with the Substitution of Attorney—Civil, have the person who mailed the document complete this Proof of Service by Mail. An <u>unsigned</u> copy of the Proof of Service by Mail should be completed and served with the document. Give the Substitution of Attorney—Civil and the completed Proof of Service by Mail to the clerk for filing. If you are representing yourself, someone else must mail these papers and sign the Proof of Service by Mail.*

1  I am over the age of 18 and **not a party to this cause.** I am a resident of or employed in the county where the mailing occurred. My residence or business address is *(specify)*

 1881 Business Center Drive San Bernardino CA 92408

2  I served the Substitution of Attorney—Civil by enclosing a true copy in a sealed envelope addressed to each person whose name and address is shown below and depositing the envelope in the United States mail with the postage fully prepaid

 (1) Date of mailing  June 30, 2010        (2) Place of mailing *(city and state)*  San Bernardino CA

3  I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct

Date  June 30, 2010

Tessa M. Wilkerson
_____
(TYPE OR PRINT NAME)

_____
(SIGNATURE)

### NAME AND ADDRESS OF EACH PERSON TO WHOM NOTICE WAS MAILED

4  a  Name of person served  Bank of America
   b  Address *(number, street, city, and ZIP)*
      9000 South Side Blvd
      Jacksonville, FL 32256
   c  Name of person served
   d  Address *(number, street, city, and ZIP)*


   e  Name of person served
   f  Address *(number, street, city, and ZIP)*


   g  Name of person served
   h  Address *(number, street, city, and ZIP)*


   i  Name of person served
   j  Address *(number, street, city, and ZIP)*



 ☐  List of names and addresses continued in attachment

**SUBSTITUTION OF ATTORNEY—CIVIL**
**(Without Court Order)**

EXHIBIT 5

1    **BRYAN CAVE LLP**
     Stuart W. Price (SBN 125918)
2    Merrit M. Jones (SBN 209033)
     Two Embarcadero Center, Suite 1410
3    San Francisco, California 94111
     Telephone:    (415) 675-3400
4    Facsimile:    (415) 675-3434

5    Attorneys for Defendant
     BANK OF AMERICA, N.A.
6

7

8              **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9                  **FOR THE COUNTY OF SACRAMENTO**

10

11   MICHAEL DOVGAN,                          Case No.: 34-2010-00079567

12              Plaintiff,                     **NOTICE TO ADVERSE PARTY AND**
                                              **STATE COURT OF REMOVAL OF**
13       v.                                    **CIVIL ACTION TO FEDERAL COURT**

14   BANK OF AMERICA, N.A.,
     NORTHWEST TRUSTEE SERVICES,
15   INC., JOHN OR JANE DOES 1-1000,           Complaint Filed:    June 4, 2010
     Inclusive,                                Trial Date:         Not Assigned
16
                Defendants.
17

18

19

20

21

22

23

24

25

26

27

28

SF01DOCS\26192.1

NOTICE TO ADVERSE PARTY AND STATE COURT OF REMOVAL – CASE NO. 34-2010-00079567

1    **TO PLAINTIFF MICHAEL DOVGAN, HIS ATTORNEY OF RECORD, AND**

2    **THE CLERK OF THE ABOVE-TITLED COURT:**

3    **PLEASE TAKE NOTICE THAT** pursuant to 28 U.S.C. § 1446(d), a Notice of

4    Removal of this Action was filed in the United States District Court for the Eastern District of

5    California on January 25, 2011, for the purpose of removing this action to federal court. A copy

6    of said Notice of Removal is attached to this Notice as Exhibit A and is served and filed

7    herewith.

8    Pursuant to 28 U.S.C. § 1446(d), this Court need take no further action with respect to

9    this case "unless and until the case is remanded."

10

11   Dated:  January 28, 2011.                          **BRYAN CAVE LLP**
                                                        Stuart W. Price
12                                                      Merrit M. Jones

13

14                                                      By: _Merrit M. Jones_____
                                                            Merrit M. Jones
15                                                          Attorneys for Defendant
                                                           BANK OF AMERICA, N.A.
16

17

18

19

20

21

22

23

24

25

26

27

28

BRYAN CAVE LLP
TWO EMBARCADERO CENTER, SUITE 1410
SAN FRANCISCO, CA 94111-3907

SF01DOCS\26192.1

2

NOTICE TO ADVERSE PARTY AND STATE COURT OF REMOVAL – CASE NO. 34-2010-00079567